# EXHIBIT B

CAROL THOMAS,                              *       IN THE
780 Paul Birch Drive
Crownsville, MD 21032                      *       CIRCUIT COURT

On Her Own Behalf And On Behalf Of         *       FOR
All Others Similarly Situated,
                                           *       ANNE ARUNDEL COUNTY

            Plaintiffs,                    *

v.                                         *       Case No. _C 02-CV-18001567_

WEST STREET MOTORS LLC,                    *
d/b/a/ HONDA OF ANNAPOLIS,
1736 West Street                           *
Annapolis, MD 21401
        Serve On: Travis J. Martz          *
                 238 West Street
                 Annapolis, MD 21401       *
                                           *
            Defendant.
                                           *

*      *      *      *      *      *      *      *      *      *      *      *      *

### CLASS ACTION COMPLAINT AND PRAYER FOR JURY TRIAL

Plaintiff, Carol Thomas ("Named Plaintiff"), on her own behalf and on behalf of all

others similarly situated, by and through her attorneys, Richard S. Gordon, Ashley A. Wetzel,

Mark H. Steinbach (Of Counsel), and GORDON, WOLF & CARNEY CHTD., sues

Defendant, West Street Motors LLC d/b/a Honda of Annapolis ("HOA") and states as follows:

I.     **Introduction**

    1.      This is a Complaint against HOA for violations of statutory, common law and

contractual obligations.

    2.      Defendant HOA is an auto dealer in Annapolis authorized to sell new Honda

motor vehicles.  Plaintiffs are a class of persons who purchased or leased new motor vehicles from

HOA and were damaged by HOA's scheme to disguise, misrepresent and conceal its charges for

dealer-installed products.

3.      The Named Plaintiff in this action, Carol Thomas, and all Class members, were victims of HOA's scheme whose end game was to unlawfully increase its profits at their expense. HOA's scheme was made possible only by its complete disregard of key Maryland statutes that protect consumers. As a result of HOA's practices – which this lawsuit seeks to end – Named Plaintiff and the Class paid more for their new vehicles than they were worth.  They also sustained other significant financial damages.

4.      HOA systematically installs on every new vehicle it sells – and assesses high charges for – at least four separate products: "Xzilon Molecular Adhesion," mud guards, wheel locks and pin stripes. These dealer-installed products are collectively referred to hereafter in this Complaint as the "Required Options." It has been HOA's uniform policy and practice to install these add-on products ("Required Options") to every new vehicle it sells, whether or not its customers have ordered or requested them. Anyone purchasing a new vehicle from HOA receives it with at least four "Required Options" products already installed and is charged for these products.

5.      HOA's cost to acquire and install the "Required Options" is very low. The price HOA charges for these products is very high.  "Xzilon Molecular Adhesion" typically sells for $995.00, mud guards (small pieces of plastic) typically sell for $299.00, wheel locks typically sell for $249.00 and pin stripes typically sell for $249.00. A recent report by the National Consumer Law Center, a non-profit organization, found that dealer add-on products such as those sold by HOA can be marked up from 300% to over 1,000% of their costs, far exceeding the mark-ups dealers obtain on the sale of a new vehicle.  https://www.nclc.org/issues/auto-add-ons-add-up.html

6.      Maryland car dealers, of course, may lawfully add products to their new vehicles. Years ago, however, Maryland lawmakers saw that the pricing of such products presented

2

opportunities for abuse.  Some car dealers had taken short-cuts to obtain profits by not fairly disclosing to consumers the products they added to their new vehicles and the prices that they charged.  To prevent unfair practices, the General Assembly enacted laws to assure that consumers receive a clear understanding of exactly what a dealer is selling and the price at which each of its add-on products are sold.  In passing these laws, the General Assembly guarded against the possibility that consumers might be confused, deliberately or inadvertently, by a salesperson's talk, or simply forget what they had been shown on papers posted on a car's windows, or on worksheets or draft contracts during the hours-long process required to complete a car purchase. Thus, Maryland law requires dealers to provide at the very point of sale (i.e., in the formal and final written vehicle sales contract), an unambiguous, straightforward disclosure of each product a dealer adds to a new vehicle and the price it seeks to collect for each such dealer-installed product.

7.      HOA has earned a D- rating from the Better Business Bureau (www.bbb.org, last visited on May 8, 2018).  Evidence to be introduced at the trial of this lawsuit will prove the BBB is a generous grader.

8.      The key document in any motor vehicle transaction is the formal and final written vehicle sales contract signed after all discussions about the transaction, at the very point and moment of sale.  HOA, like other dealers, structures its vehicle sales contract as an "Order" that the buyer gives to the dealer for the vehicle the buyer has agreed to acquire.  As protection for the dealer, HOA's form Order (which is the final vehicle sales contract) stipulates that the dealer is not bound until the Order (the vehicle sales contract) is signed and accepted by the dealer or its authorized representative.  This affords HOA a final opportunity to assure that the customer's vehicle sales contract accurately reflects the terms of the deal agreed upon by the parties and contains all of the agreements of the parties. Regulations promulgated by the Maryland Motor

3

Vehicle Administration require that "(e)very vehicle sales contract or agreement shall be evidenced by an instrument in writing *containing all of the agreements of the parties*." (emphasis added). COMAR 11.12.01.15A.

9.    To further assure that Maryland car buyers fully understand and agree to the terms of a new motor vehicle purchase, Maryland's General Assembly enacted protections for consumers that build on disclosures long mandated by federal law.  Congress passed the Automobile Information Disclosure Act of 1958 to require that auto manufacturers post a window sticker on new vehicles identifying the equipment provided by the auto manufacturer and its suggested retail pricing for that standard equipment. That law also requires additional identification of all optional equipment installed by the manufacturer and the cost of that optional equipment.  28 U.S.C. §1231 *et seq.*  The price posted on the window sticker for all manufacturer-provided equipment is well known in the auto trade as the Manufacturer's Suggested Retail Price ("MSRP").

10.    Maryland goes further than federal law to protect consumers.  It requires that vehicle sales contracts prepared by a Maryland auto dealer disclose a new vehicle's "base price" (the manufacturer's charge for the standard equipment on its new vehicle, a charge which it posts on the window sticker it attaches to its new car before shipping it to the dealer) along with a **"clear and specific description of each extra item and each extra charge not included in the base price of the vehicle ordered by the buyer."**  (emphasis added). Md. Transp. Code §§15-311(b)(1) and (3); *see also* Md. Transp. Code §15-311(a).  Md. Transp. Code §15-311 provisions prohibit auto dealers from slipping undisclosed charges into a vehicle sales contract at the point of sale and assure there has been a clear meeting of the minds between the customer and selling dealer.

4

11.     HOA's standard vehicle sales contract is properly formatted to facilitate making the disclosures required by Maryland law.  A representative exemplar – the vehicle sales contract entered into between Named Plaintiff Carol Thomas and HOA – is attached as **Exhibit A.** HOA's standard vehicle sales contract includes in large letters the words "BASE PRICE OF VEHICLE" and provides an adjacent space where HOA *should* disclose and is required to disclose the manufacturer's suggested retail price for its standard equipment on the vehicle, taken from the window sticker that federal law requires the manufacturer to post on its vehicle.  As will be seen, *HOA does not provide this essential disclosure* to its customers.

12.     Further down its vehicle sales contract form, HOA provides spaces to facilitate disclosure of "Manufacturer Installed Items and Charges" and "Dealer Installed Items and Charges," the disclosures required by Md. Transp. Code §15-311.  *But HOA also does not make these essential disclosures.*

13.     Instead – and central to its scheme to deceive customers – on the vehicle sales contracts HOA entered into with Named Plaintiff and the Class, HOA falsifies the price it discloses on the line adjacent to the words "BASE PRICE OF VEHICLE."  Rather than taking that figure from the manufacturer's window sticker as required by Md. Transp. Code §15-311, it substitutes and inserts its own selling price – without disclosing that its figure has been inflated by surreptitiously including **within it** its high (and highly profitable) charges for its "Required Options" – even though such disclosures are required by Md. Code Ann., Transp. §15-311.

14.     Even in the absence of Md. Code Ann.,Transp. §15-311, it would be deceptive for HOA to provide on a vehicle sales contract form a place for itemization of "Dealer Installed Items and Charges" but leave those spaces blank – indicating that there were no such products or charges for such products – when, in fact, HOA had added its charges for those products in setting its falsified "base price."

5

15.     As a result of HOA's grossly illegal manipulation of its vehicle prices, Named Plaintiff and the Class were induced to believe they were receiving a favorable price on their vehicles when they were not, induced to go through with their transactions and induced to pay more for the vehicles than they were worth.

16.     Had HOA disclosed a new vehicle's true base price and had HOA disclosed its own charges for dealer-installed products on the vehicle sales contracts of Named Plaintiff and the Class as an addition to the vehicle's base price (rather than concealing them within the dealer's falsified base price) as required by Maryland law, Named Plaintiff and the Class would not have purchased the vehicles or would have demanded material price concessions.

## II.     Jurisdiction and Venue

17.     This Court has personal jurisdiction over HOA because HOA is a corporation organized under the laws of Maryland, its principal place of business is in Maryland, it systematically and continuously transacts business in Maryland and the case arises out of HOA's business transactions within Maryland.

18.     Venue is proper in this Court because HOA's principal place of business is located in Anne Arundel County, HOA systematically and continually transacts business in Anne Arundel County, and the causes of action in this Complaint arose in Anne Arundel County.

## III.     Parties

19.     Plaintiff, Carol Thomas, resides in Crownsville, Maryland. Ms. Thomas purchased a new vehicle from HOA's dealership in Anne Arundel County Maryland that, unknown to her, included charges for dealer-installed products (the "Required Options") she did not order and did not want.

20.     When Ms. Thomas realized after the sale that HOA had charged more than the amount she agreed to pay for her vehicle, she tried unsuccessfully to resolve her concerns by

6

speaking with dealer representatives.  When these attempts failed, she filed a complaint against HOA with the Office of the Attorney General for Maryland.  That office offered to provide its arbitration services to HOA and Ms. Thomas.  Ms. Thomas agreed to arbitrate her claims with the Attorney General's office; however, HOA refused to arbitrate through that office.  Ms. Thomas then attempted to arbitrate her claims against HOA with the National Center for Dispute Resolution but that entity declined to handle arbitration because her complaint against HOA was unrelated to the vehicle manufacturer's warranty.  When Ms. Thomas asked HOA to identify an entity HOA found acceptable as an arbitrator, HOA refused to respond and has rejected multiple attempts by Ms. Thomas to resolve her complaint through arbitration. Accordingly, Ms. Thomas has withdraw her agreement to arbitrate this dispute and HOA has waived any right it may once have had to request that Ms. Thomas' complaints be resolved through arbitration.

     21.    Defendant, HOA, is a Maryland corporation that regularly sells new vehicles to customers in Anne Arundel County, Maryland.

**IV.   Facts Applicable to All Counts**

     22.    At all times relevant to this Complaint it has been HOA's practice to affix on a side window of each new vehicle offered for sale what is known in the trade as a "Monroney sticker."

     23.    The Monroney sticker is required by federal law, the Automobile Information Disclosure Act of 1958, 28 U.S.C. §1231 *et seq*. That law requires manufacturers to establish suggested retail prices for new motor vehicles, both for the retail price of the vehicle and for any optional equipment which the manufacturer installs on the vehicle before it is delivered to the dealer.

7

24.     In order to comply with the disclosure provisions of Maryland's Transportation Code, § 15-311, motor vehicle dealers in Maryland who add products to a new vehicle must prepare vehicle sales contracts which accurately disclose the price of the standard equipment provided by the manufacturer for a new vehicle (the vehicle's "base price") *and* provide a "clear and specific description of each extra item and each extra charge not included in the base price of the vehicle ordered by the buyer." *Id.* These Maryland dealers therefore must routinely take the price of the standard equipment contained on a vehicle's Monroney sticker and disclose it as the base price of the vehicle on the customer's vehicle sales contract. They also must routinely itemize and disclose on a vehicle sales contract the cost of any dealer-added items not included within the "base price" of the vehicle ordered by the buyer in their vehicle sales contract.

25.     HOA, however, does not. At all times relevant to this Complaint, it has been Defendant HOA's standard practice to identify on a customer's vehicle sales contract something other than a vehicle's true base price". Instead of accurately disclosing the manufacturer's "base price" for a vehicle, taken from the Monroney sticker, HOA changes that number to provide a "base price" for a vehicle that is something completely different. On its vehicle sales contracts, HOA always includes **within** the vehicle's purported "base price" the cost of certain dealer preinstalled products (the "Required Options") including Xzilon Molecular Adhesion – typically priced at $995.00, mud guards – typically priced at $299.00, wheel locks – typically priced at $249.00, pin stripes – typically priced at $249.000, and other dealer installed items and charges.

26.     The identity and the cost of these "Required Options" are not separately itemized on a customer's vehicle sales contract as required by Md. Transp. Code §§15-311(b)(1) and (3).

27.     Rather than straightforwardly carrying price information from the MSRP over to its vehicle sales contract to accurately disclose the base price of the vehicle as required by Md. Transp. Code 15-311(b)(1), HOA deceptively and misleadingly includes (and thereby conceals)

8

the cost of the "Required Options" **within** the purported "base price" of the vehicle, even though Maryland law plainly prohibits dealers from including those costs within the vehicle's "base price" and expressly requires that each such dealer-installed item – and the charge for each such item – be itemized and disclosed on the vehicle sales contract.  Without such disclosures, at a minimum, there is no meeting of the minds between the buyer and seller.

28.     HOA systematically charges customers for "Required Options" that raise a new vehicle's price by an amount in excess of $1,700.  The fee which HOA charges and collects from Class members for its "Required Options" is, in each transaction, a built-in buffer to raise the price of its vehicles and to make it appear – deceptively – that the price HOA ultimately agrees to accept represents a financially significant discount from the vehicle's price.

29.     HOA's "Required Options" are nearly worthless and add little or no value to a vehicle, yet provide an enormous return on investment for HOA.  And one of these products, in fact, cannot be sold lawfully in the state of Maryland.

30.     Indeed, the most expensive of the "Required Options," at $995.00, "Xzilon Molecular Adhesion" is a product installed by HOA on all of its new vehicles.  It purportedly is designed to protect the interior and exterior of a new vehicle from damage due to weather, UV exposure, stains, and a host of other specific causes.  It comes with a written warranty that provides for free repair of covered damage.  As such, this product is regulated by the Maryland Vehicle Protection Products Act ("MVPPA"), Md. Comm. Law, §14-4A-01.  *See* Comm. Law §14-4A-01(e), identifying vehicle protection products as those with a written warranty, where the product is installed on or applied to a vehicle and designed to prevent loss or damage to a vehicle from a specific cause.

31.     When a car dealer such as HOA wishes to sell a vehicle protection product such as "Xzilon Molecular Adhesion," it must first duly register its product with the Division of

9

Consumer Protection of the Office of the Attorney General for Maryland.  *Id., §14-4A-03*. The

warrantor, Xzilon, Inc., also must register its product and obtain a warranty reimbursement

insurance policy required by the MVPPA.  Md. Comm. Law §§14-4A-03, 14-4A-04 and 14-4A-

07.  As of the time this Complaint is filed, "Xzilon Molecular Adhesion" has never been

registered as required by the MVPPA and, on information and belief, many of the other

requirements of the MVPPA have not been met.

      32.     HOA's installation and sale of "Xzilon Molecular Adhesion" to motor vehicles in

Maryland was unlawful.  As set forth in Count One below, all Class members are entitled to a

full refund of HOA's charge for this product.

      33.     Had HOA and Xzilon sought to register "Xzilon Molecular Adhesion" with the

Office of the Attorney General, it would have had to answer difficult questions.  "Xzilon

Molecular Adhesion" is a product of questionable value, at best.  According to the majority of

customer reviews posted on Amazon.com, the product is ineffective and Xzilon's customer

service is poor.  https://www.amazon.com/Xzilon-Molecular-Adhesion-Ultimate-

Protection/product-

reviews/B001OBKPUE/ref=cm_cr_dp_d_show_all_btm?ie=UTF8&reviewerType=all_reviews

This is true whether the product is applied by an auto dealer at the point of sale or by customers

who apply the product on their own.  *Id.*  Some dealers who initially were enthusiastic promoters

of the product have stopped selling it, concluding that it does not last as long as promised.

https://www.youtube.com/watch?v=BFBb7iA4kR8

      34.     In any event, Customers who wish additional protection for the exterior or

interior of their vehicles can readily obtain the kind of protection allegedly provided by "Xzilon

Molecular Adhesion" for less than $75.00, rather than the $995.00 typically charged by HOA.

10

35.     HOA's charges for the remaining "Required Options" were not just deceptively presented to HOA's customers as set forth in this Complaint but were designed primarily for HOA's profit and convenience, without regard to whether the customer ordered installation of these products.

36.     For example, HOA pre-installed wheel locks on every new vehicle it sells, for which it typically charges $249.00, whether or not its customer wanted or knowingly ordered this product.  A very high percentage of HOA's customers purchasing new Hondas would not willingly choose to have wheel locks installed on their vehicles, if given a choice, even if there were no charge for the product.  This is because in order to change a flat tire protected by a wheel lock, one needs the special little key that comes with the locks.  This small key is easily lost.  If lost, it will be impossible for the average motorist to successfully change a tire, leaving that customer stranded.  Even professionals with towing services provided by the American Automobile Association ("AAA") always inquire whether a stranded motorist has wheel locks because of the complications they cause.  But HOA preinstalls wheel locks principally for its own convenience and selfish benefit:  HOA believes they help deter would be thieves from stealing rims or tires off of new vehicles on its lot (a major inconvenience and cost for a dealer with over a hundred vehicles on display in one place), and they can be provided and installed on new vehicles for a small fraction of the $249.00 charge HOA assesses, providing it a very high rate of return.

37.     Similarly, HOA preinstalls mud guards and pin stripes on every new vehicle it sells, whether or not the customer wanted or knowingly ordered these products, because its cost of providing them is a small fraction of the $299.00 it charges for mud guards and the $249.00 it charges for pin stripes, again securing for itself very high rates of return.

11

38.     Customers who desire any of HOA's "Required Options" can easily install them on their own or have an independent shop such as Pep Boys install them for a fraction of HOA's charge.  Yet HOA preinstalls these products because they enable it to deceptively offer customers discounts from its surreptitiously inflated asking prices for a vehicle.

39.     Upon information and belief, Honda Financial Services, banks and other auto financing sources will not extend additional funds to finance the cost of HOA's "Required Options" the way they will for true value-added items such as leather seats or a premium sound system because HOA's "Required Options" are for items that simply do not increase a vehicle's market value

40.     As a result of HOA's unfair, deceptive and unconscionable practices, Named Plaintiff and the Class were charged more than $1,700.00 for "Required Options" that were nearly worthless but wildly overpriced, through fees that were uniformly disguised and misrepresented in the dealership's vehicle sales contracts. Named Plaintiff and the Class paid significantly more for their vehicles than they would have paid had the "Required Options" not been so-added to their vehicles, they paid significantly more for the vehicles than they would have paid for comparable vehicles at dealerships other than HOA, and they paid significantly more for their vehicles than they were worth.  In addition, Named Plaintiff and the Class incurred and paid additional excise tax on the amounts unlawfully charged for the "Required Options" and paid interest charges under their financing contracts on both the cost of the "Required Options" and the excise tax on those charges.

V.     **Facts Applicable to the Named Plaintiff**

41.     On or about October 27, 2016 Named Plaintiff, Carol Thomas ("Ms. Thomas"), entered into an Order for the purchase of a new 2016 Honda CR-V, VIN 2HKRM4H57GH709847, from HOA. A copy of Ms. Thomas' Order/vehicle sales contract for

12

the purchase of the vehicle is attached hereto as **Exhibit A**.  She purchased her vehicle primarily

for personal, family and/or household use.

42.     The Order/vehicle sales contract Ms. Thomas signed did not authorize or

request that HOA install any of the "Required Options" on her vehicle.  Ms. Thomas'

Order/vehicle sales contract did not reflect any agreement by her to pay for any of the

"Required Options."  Nonetheless, in contravention of that Order/vehicle sales contract, HOA

installed or purported to install the "Required Options" on her vehicle and charged her for these

products, without her knowledge.

43.     Unknown to Ms. Thomas, HOA falsified and failed to disclose the vehicle's true

base price on her vehicle sales contract; instead, it surreptitiously included its charges for the

"Required Options" **within** the "Base Price" on her Order/vehicle sales contract attached as

**Exhibit A**.

44.     HOA's vehicle sales contract with Ms. Thomas includes a preprinted section for

disclosure of "Dealer Installed Items and Charges."  HOA did not disclose its dealer-installed

"Required Options" on the parties' contract.  Indeed, the only entry under "Dealer Installed

Items and Charges" states, without explanation, "Xzilon" and a charge of "0.00."  No further

itemization of HOA's dealer installed products is provided on HOA's vehicle sales contract with

Ms. Thomas.

45.     Unknown to Ms. Thomas, HOA included in its $26692.00 "Base Price" for her

vehicle a charge for each of the "Required Options" "Xzilon Molecular Adhesion" ($995.00),

wheel locks ($249.00), mud guards ($299.00), and pin stripes ($249.00), at a total charge of

$1,792.00.

46.     When the vehicle Ms. Thomas purchased arrived for delivery, HOA did not

inform her of any extra items on the vehicle she did not order, in violation of Md. Code Ann.,

Transp. §15-311(e), and HOA did not inform her of the cost of the extra items she did not order, in violation of Md. Code Ann., Transp. §15-311(f).

**VI.     Class Action Allegations**

47. The Named Plaintiff brings this action on behalf of a Class consisting of:

> All Customers who (1) purchased or leased a new motor vehicle from HOA where (2), as part of the transaction, one or more of the "Required Options" were included in the "Base Price" of the motor vehicle or, in the case of leases, included in the Capitalized Cost, but (3), the charges for those "Required Options" were not itemized and disclosed on the Customer's vehicle sales contract.

> Excluded from the Class are those individuals who now are or have ever been executives of HOA.

48.     The Class, as defined above, is identifiable. The Named Plaintiff is a member of the Class.

49.     The Class consists, at a minimum, of hundreds or thousands of individuals, and is thus so numerous that joinder of all members is clearly impracticable.

50.     There are questions of law and fact which are not only common to the Class, but which predominate over any questions affecting only individual Class Members. The common and predominating questions include, but are not limited to:

a.   Whether HOA's practice of installing and charging its customers for "Xzilon Molecular Adhesion," when this product had not been registered with the Office of the Attorney General of Maryland and when HOA and Xzilon violated multiple other provisions of the law, violates the Maryland Vehicle Protection Products Act;

b.   Whether HOA's practice of charging its customers for "Xzilon Molecular Adhesion," when the product had not been registered with the Office of the Attorney General of Maryland, is an unfair or deceptive trade practice that

14

violates the Maryland Consumer Protection Act ("CPA"), Md. Code Ann., Com.
§§ 13-101, et seq.;

c.   Whether HOA violated its duty of good faith at common law and under
Maryland's Uniform Commercial Code and breached its vehicle sales contracts
with the Class when it charged for "Xzilon Molecular Adhesion," a product that
could not lawfully be sold in Maryland;

d.   Whether HOA breached its vehicle sales contracts with the Class by including
charges for dealer installed products even though HOA omitted those charges
from the contract and informed the Class via that contract that there were no
charges for dealer installed products included in the price of the vehicle;

e.   Whether HOA's practice of including charges for its "Required Options" within
the "Base Price of Vehicle" on its vehicle sales contract and not itemizing them on
its vehicle sales contracts violates its obligations under Md. Code Ann., Trans.
§15-311 to provide a clear explanation on a customer's vehicle sales contract of
each extra charge and each extra item not included within the "base price" of a
vehicle;

f.   Whether HOA's misrepresentations and alterations of the "base price" of its
vehicles on its vehicle sales contracts, and/or its failure to itemize and disclose the
cost of its "Required Options" on its vehicles sales contracts, violates the CPA;

g.   Whether HOA breached the implied warranty of merchantability by selling
vehicles that cannot pass without objection in the trade under the contract
description;

h.   Whether HOA's breach of the implied warranty of merchantability violates the
Magnusson Moss Warranty Act;

15

     i.   Whether HOAs should disgorge the monies received for Xzilon and the other "Required Options" as a result of its scheme to cheat the Named Plaintiff and the Class;

     j.   Whether HOA ought to be enjoined from the illegal practices alleged in this Complaint;

     k.   Whether HOA owed a duty to the Class; and,

     l.   Whether HOA's practice and policy of charging consumers for Xzilon and the other "Required Options" violates its "obligation of good faith" under the common law and/or under Md. Code Ann., Com. §1-203.

51.    The claims of the Named Plaintiff are typical of the claims of each member of the Class, within the meaning of Rule 2-231(a)(3), and are based on and arise out of common facts constituting the wrongful conduct of Defendant. The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for the Defendant, within the meaning of Rule 2-231(b)(l)(A).

52.    Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks equitable remedies with respect to the Class as a whole, within the meaning of Rule 2-231(b)(2).

53.    Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Rule 2-231 (b)(3). The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. To Named Plaintiff's knowledge, no similar litigation is currently pending by other members of the Class. Plaintiff's

16

counsel are experienced in class actions and foresee little difficulty in the management of this case as a class action.

**VII.    Causes of Action**

### COUNT ONE
### Maryland Vehicle Protection Products Act
### Md. Code Ann., Commercial Law, §14-4A-01 *et seq*

54.    Plaintiff realleges and incorporates by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

55.    "Xzilon Molecular Adhesion" is a vehicle protection product under the Maryland Vehicle Protection Products Act ("MVPPA"), Md. Comm. Code §14-4A-01(e).  This Act is intended to insure that only legitimate vehicle protection products may be sold in Maryland and to insure that the warrantor of such products has the financial ability to meets its obligations under the warranty, all for the protection of Maryland consumers who purchase these products.

56.    Vehicle protection products under the MVPPA may not be sold or offered for sale in Maryland unless the seller and warrantor of the product, and the warrantor's administrator, comply with the provisions of the MVPPA.  *Id.*, §14-4A-03.

57.    "Xzilon Molecular Adhesion" has not been registered with the Office of the Attorney General of Maryland as required by the MVPPA, *Id.*, §§14-4A-03 and 14-4A-04.  On information and belief, the warrantor of the product is not insured as required by the MVPPA and its warranty does not provide the terms and information required by the MVPPA, §14-4A-08.  The product therefore may not be sold in Maryland per the MVPPA, §14-4A-03.

58.    HOA's sale of "Xzilon Molecular Adhesion" to Named Plaintiff and the Class violates the Maryland Vehicle Protection Products Act, Md. Code Ann., Comm. §14-4A-01 *et seq*.

17

59.     As a result of HOA's violations of the MVPPA, Named Plaintiff and the Class were charged substantial fees for a product that could not lawfully be sold and paid excise taxes and finance charges on the cost of this product.

## COUNT TWO
### Breach of Contract

60.     Plaintiff realleges and incorporates by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

61.     Named Plaintiff and the Class ordered vehicles from HOA on the terms set forth in their respective Orders/vehicle sales contracts.  These Orders/vehicle sale contracts do not include an order for installation of or agreement to pay for any of HOA's "Required Options." By installing the "Required Options" products on the vehicles of Named Plaintiff and the Class without their agreement, and charging them for products they did not agree to purchase, HOA breached its contracts with Named Plaintiff and the Class.

62.     By including charges for its "Required Options" within the base price of their vehicles without obtaining written consent to pay those charges from Named Plaintiff and the Class, and collecting payment of those charges, HOA breached its contract with Named Plaintiff and the Class.

63.     Named Plaintiff and the Class entered into an Order/vehicle sales contracts for the purchase of new vehicles from HOA that contained charges of more than $1,700 for the "Required Options," charges that were not disclosed on that contract.  These charges were not disclosed on the contracts even though the vehicle sales contract forms included preprinted spaces for the itemization of charges for any and all dealer-installed products such as the "Required Options."  And these charges were not disclosed on the contracts despite the

18

requirement that they be disclosed, per Md. Code Ann., Transp. §§15-311(b)(1) and (3).  These

statutory provisions, imposing an obligation of disclosure, are a part of the contracts by operation

of Maryland law.  By selling Named Plaintiff and the Class vehicles without the disclosures

required by law, HOA breached the parties' contracts.

    64.    Implied in the contracts between Named Plaintiff and the Class and HOA is a

covenant of fair dealing.  In addition, at common law and under Md. Com. Law Code Ann., §1-

304, HOA owes Named Plaintiff and the Class a duty of good faith in the performance and

enforcement of each contract, including the duty of acting honestly in fact and of observing

reasonable commercial standards of fair dealing in the auto trade.

    65.    HOA breached its duties and its contracts with Named Plaintiff and the Class

when it installed and sold a vehicle protection product ("Xzilon Molecular Adhesion") that could

not lawfully be sold in the state of Maryland.

    66.    HOA breached its duties and its contracts with Named Plaintiff and the Class

when it installed and sold all of its "Required Options" without obtaining the express, written

consent of Named Plaintiff and the Class on its vehicle sales contracts.

    67.    HOA breaches its duties and its contracts with Named Plaintiff and the Class

when it altered the base price of the vehicle on their respective vehicle sales contracts to include

and conceal within the base price its charges for the "Required Options."

    68.    HOA breached its duty of acting honestly in fact and of observing reasonable

commercial standards of fair dealing in the auto trade by concealing that the base price for the

vehicle disclosed on its vehicle sale contracts included the cost of more than $1,700 for the

"Required Options."

    69.    As a result of HOA's breaches of the covenant of fair dealing, its breaches of the

duty of good faith and its breaches of contract, Named Plaintiff and the Class paid for "Xzilon

19

Molecular Adhesion" that could not lawfully be sold in Maryland, paid more for their vehicles than they would have paid had the "Required Options" and HOA's charge for the "Required Options" not been added unlawfully to their contracts or had HOA disclosed the "Required Options" in their contracts as required by Maryland law, paid more for their vehicles than they would have paid for comparable vehicles at other non-HOA dealerships, paid more for their vehicles than they were worth, paid inflated excise taxes on their vehicles, paid finance charges on the amount by which their vehicle prices were inflated by the cost of the Required Options, and sustained other losses and damages as set forth above.

**COUNT THREE**
**Implied Warranty of Merchantability**
**MD Code Ann., Commercial Law, § 2-314(2)(a)**

70.    Plaintiffs reallege and incorporate by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

71.    Maryland law, like the law in every other state, imposes implied warranty obligations on merchants who sell goods, including new motor vehicles.

72.    HOA is a "merchant" under Maryland's Uniform Commercial Code, MD Code, Commercial Law § 2-104(1) because it deals in new motor vehicles and holds itself out as having knowledge or skill peculiar to the goods involved in its transactions with Named Plaintiff and the Class.

73.    HOA, as the retailer of new Honda vehicles, is a "seller" as defined in MD Code, Commercial Law, §2-314(1)(a).

74.    Per Md. Code Ann., Comm. §2-314(1), a warranty that the goods purchased by Named Plaintiff and the Class from HOA will be merchantable is implied.in their contract for sale.

20

75.     Maryland law, like the law of other states that have enacted the Uniform Commercial Code, identifies 6 minimum requirements of merchantability for goods sold by merchants such as HOA.  Each of the minimum requirements of merchantability are identified in Md. Comm. Law § 2-314(2)(a) through (f).  In order to be merchantable, the goods must meet each of the six minimum requirements of merchantability set forth in this statute.  Failure to meet any one of these minimum characteristics is a breach of the implied warranty of merchantability.

76.     Here, Named Plaintiffs and the Class bring claims for breach of the implied warranty of merchantability arising under Md. Comm. Law § 2-314(2)(a), which provides that "Goods to be merchantable must be at least such as (a) [p]ass without objection in the trade under the contract description."

77.     The goods HOA sold to Named Plaintiff and the Class are not merchantable because they cannot pass without objection in the trade under the contract description.  Per Md. Code Ann., Transp. §§15-311(b)(1) and (3), the vehicle sales contract must accurately disclose the vehicle's base price and provide a clear and specific description of each extra item and each extra charge not included in the base price of the vehicle ordered by the buyer.

78.     By failing to provide in the vehicle sales contracts of Named Plaintiff and the Class the accurate base price of the vehicle being sold and a clear and specific description of each extra item and each extra charge not included in the base price of the vehicle as required by Md. Code Ann., Transp. §§15-311(b)(1) and (3), HOA breached the implied warranty of merchantability arising under Md. Code Ann., Comm. §2-314(2)(a).

79.     As a result of HOA's breach of the implied warranty of merchantability the Named Plaintiff and Class Members were induced to go through with their transactions, pay for the "Required Options" and sustained the damages and losses set forth above.

21

## COUNT FOUR
### Magnuson Moss Warranty Act
### 15 U.S.C. § 2301 *et seq.*

80.     Plaintiff realleges and incorporates by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

81.     The Magnuson Moss Warranty Act, 15 U.S.C. §2301 *et seq.*, provides that consumers damaged by breach of an implied warranty may bring suit to recover damages and other legal and equitable relief in any court of competent jurisdiction in any State.  15 U.S.C. §2310(d)(1).

82.     Named Plaintiff and members of the Class are "consumers' within the meaning of 15 U.S.C. §2301(e).

83.     HOA is a "warrantor" within the meaning of 15 U.S.C. §2301(5).

84.     Named Plaintiff and the Class are persons damaged by HOA's breach of the implied warranty of merchantability arising under Maryland law, as set forth in Count Three above.

85.     HOA's breach of the implied warranty of merchantability arising under Maryland law as set forth in Count Three above violates the Magnuson Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* including 15 U.S.C. §2301(d).

86.     As a result of HOA's violations of the Magnuson Moss Warranty Act, Named Plaintiff and the Class sustained the losses and damages set forth above.

## COUNT FIVE
### Maryland's Consumer Protection Act
### Md. Code Ann., Comm. Law §§ 13-101 et seq.,

87.     Plaintiffs reallege and incorporate by reference the allegations set out in the foregoing paragraphs as if fully set forth below.

22

88.     Each vehicle transaction set forth herein is governed by the Consumer Protection Act ("CPA"), Md. Code Ann., Comm. §§ 13-101 *et seq.*

89.     HOA is a "merchant" who "directly or indirectly either offers or makes available to consumers any consumer goods or consumer services" and is thus governed by the Consumer Protection Act, Md. Code Ann., Com. § 13-101 (g).

90.     Section 13-303 of the Commercial Law Article prohibits unfair or deceptive trade practices in the sale, and in the offer for sale, of consumer goods or services. Md. Code Ann., Com. §§13-303(1) and (2).

91.     Section 13-301(1) provides that unfair or deceptive trade practices include any false, misleading oral or written statement or other representations of any kind which has the capacity, tendency or effect of deceiving and misleading consumers.

92.     Section 13-301(2)(ii) provides that unfair or deceptive trade practices include any representation that a merchant has a sponsorship or approval which it does not have.

93.     Section 13-301(2)(iv) provides that unfair or deceptive trade practices include any representation that consumer goods or services are of a particular standard, quality or grade which they are not.

94.     Section 13-301(3) provides that unfair or deceptive trade practices include failure to state a material fact if the failure deceives or tends to deceive.

95.     HOA committed unfair and deceptive trade practices in violation of the CPA, as set forth in Count One above, by selling "Xzilon Molecular Adhesion" to Named Plaintiff and the Class .

96.     HOA committed unfair and deceptive trade practices in violation of the CPA by charging and collecting for the cost of "Required Options" which had not been ordered by Named Plaintiff and the Class on their vehicle sales contracts.

97.     HOA committed unfair and deceptive trade practices in violation of the CPA by failing to provide on the vehicle sales contract of the Named Plaintiff and the Class material facts about its "Required Options" and its charges for those "Required Options" – material facts whose disclosure was required by §15-311 of the Transportation article as set forth above.

98.     HOA committed unfair and deceptive trade practices in violation of the CPA by misrepresenting, disguising and altering the base price of a vehicle on its vehicle sales contracts with Named Plaintiff and the Class and including the cost of the Required Options within the altered base price rather than disclosing them as charges HOA added to the vehicle's true base price.

99.     HOA also committed unfair and deceptive trade practices in violation of the CPA by the unconscionable manner in which it presented the dealer add-on options to Named Plaintiff and the Class and by seeking and obtaining an unconscionable price for such goods or services.

100.    By engaging in the acts and omissions set forth above, by making the misrepresentations set forth above, and by failing to disclose material facts where the failure to do so deceived or tended to deceive, HOA committed unlawful trade practices in violation of the Maryland Consumer Protection Act, §§13-303(1) and (2) and§§ 13-301(1), (2)(i) and (iv), and (3).

101.    HOA's conduct as set forth above had the capacity, tendency or effect of deceiving Named Plaintiff and the Class, who in fact were deceived or misled, causing them injury and loss.

102.    As a result of HOA's unfair and deceptive trade practices in violation of the CPA, Plaintiff and the Class agreed to purchase or lease a new vehicle from HOA that contained the "Required Options," to pay HOA more for the vehicle than they would have paid had HOA not included charges for the "Required Options to pay more for their vehicles than they would have

24

paid for comparable vehicles purchased from other dealers. and to pay more for their vehicles than they were worth.  Named Plaintiff and the Class incurred and paid inflated charges for excise tax, many incurred finance charges on same, and Plaintiffs incurred other losses and damages.

WHEREFORE, Plaintiff and Class Members request the following relief against HOA:

A.  Actual damages in an amount equal to the cost of HOA's "Required Options," together with costs, prejudgment interest, finance charges, increased costs of excise taxes paid, and any other equitable relief as determined by this Court;

B.  Reasonable attorney's fees to be determined;

C.  The costs of this action; and,

D.  Such other and further relief as as the nature of this case may require.

Respectfully submitted,

Richard S. Gordon
Attorney ID: 8912180227
rgordon@GWCfirm.com
Ashley A. Wetzel
Attorney ID: 1612140336
awetzel@GWCfirm.com
Mark H. Steinbach (Of Counsel)
Attorney ID: 7412010340
msteinbach@GWCfirm.com
GORDON, WOLF & CARNEY, CHTD.
100 W. Pennsylvania Ave., Suite 100
Towson, Maryland 21204
Tel.    (410) 825-2300
Fax.    (410) 825-0066

25

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury of all issues so triable.

_____

Ashley A. Wetzel

26

# EXHIBIT A



# HONDA OF ANNAPOLIS

1736 West Street
Annapolis (410) 267-7100 Washington (301) 858-6660 Baltimore (410) 269-1893
**ANNAPOLIS, MARYLAND 21401**

DATE _____

| BUYERS FULL NAME | FIRST | MIDDLE | LAST | | BUYERS DRIVERS LIC. NO | | D.O.B. | STATE |
|---|---|---|---|---|---|---|---|---|
| CO-BUYERS FULL NAME | FIRST | MIDDLE | LAST | | CO-BUYERS DRIVERS LIC. NO | | D.O.B. | STATE |

| STREET | | CITY | | STATE | | ZIP | COUNTY |
|---|---|---|---|---|---|---|---|

| BUYERS PHONE   HOME (        ) | DAY (        ) | | CELL PHONE (        ) |
|---|---|---|---|
| CO-BUYERS PHONE   HOME (        ) | DAY (        ) | EMAIL | |

| INSURANCE CO | AGENT/BRANCH | | ADDRESS/CITY | | PHONE # | POLICY # |
|---|---|---|---|---|---|---|
| ☐ YES  ☐ NO  ☐ COLL  ☐ LIAB | | | | | | |

PLEASE ACCEPT THIS ORDER UPON THE TERMS AND CONDITIONS SET FORTH HEREIN, INCLUDING THE REVERSE SIDE, ALL OF WHICH I HAVE READ AND AGREE, BY MY SIGNATURE BELOW.
SHALL BE BINDING UPON ME UPON ACCEPTANCE BY YOUR AUTHORIZED MANAGER, FOR THE FOLLOWING VEHICLE:

☐ NEW   ☐ DEMONSTRATOR   ☐ USED

| YEAR | MAKE | MODEL | TYPE | COLOR | INTERIOR | ODOMETER MILEAGE |
|---|---|---|---|---|---|---|
| ENG. SIZE | STOCK NO | | ESTIMATED DELIVERY DATE | | VEHICLE IDENTIFICATION NUMBER | |

| BASE PRICE OF VEHICLE | |
|---|---|
| Manufacturer Installed Items and Charges: | |
| | |
| Freight Charge: | |
| Dealer Processing Charge (not required by law): | $  299.00 |
| Dealer Installed Items and Charges: | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| Electronic Title and Registration: | |
| CASH SALES PRICE | |
| Tire Recycling Fee | |
| TITLING AND REGISTRATION | |
| Title Fees | |
| Lien Filing Fees | |
| Title Tax | |
| Registration Fees | |

| | | |
|---|---|---|
| Electronic Title and Registration: | | |
| CASH SALES PRICE | | |
| Tire Recycling Fee | | |
| TITLING AND REGISTRATION | | |
| Title Fees | | |
| Lien Filing Fees | | |
| Title Tax | | |
| Registration Fees | | |
| | | |
| | | |
| TOTAL TITLING AND REGISTRATION CHARGES | | |
| TOTAL CASH DELIVERED PRICE | | |
| Less Credits | | |
| Deposit | | |
| Trade In Allowance On: | | |
| Balance Owed To: | | |
| Net Allowance On Trade | | |
| Total Credits | | |
| TOTAL CASH DUE ON DELIVERY | | |

## DESCRIPTION OF TRADE

| YEAR | MAKE | MODEL | TYPE | COLOR | INTERIOR | ODOMETER MILEAGE |
|---|---|---|---|---|---|---|
| ENG. SIZE | STOCK NO | | | | VEHICLE IDENTIFICATION NUMBER | |

### NOTICE TO BUYER(S)

1  Liability insurance for bodily injury or property damage is not included in the purchase
2  As to used vehicles, information on the window form is part of this agreement and the information on the window form makes any contrary provisions in this agreement void

Notice Pursuant to Automotive Warranty Enforcement Act

3  Under certain circumstances, the Maryland Automotive Warranty Enforcement Act grants to consumers the right to have a manufacturer or factory branch replace a motor vehicle or refund the purchase  price, during a warranty period which, under the Automotive Warranty Enforcement Act, is the earlier of 18,000 miles of operation or 24 months following delivery to the consumer. The Automotive Warranty Enforcement Act requires that if a new motor vehicle does not conform to all applicable warranties during the warranty period, the consumer shall, during such period, report the nonconformity, defect or condition by giving written notice to the manufacturer or factory branch by Certified Mail, Return Receipt Requested

Dealer Namepase

4  Under Maryland law, a dealer may not place on a vehicle an insignia that advertises the name of the dealer unless the dealer receives the consent of the buyer in the contract for the sale of the vehicle with notice to the buyer of his rights concerning insignias. Also, if a dealer places an insignia advertising the name of the dealer on the vehicle without receiving the buyer's consent, the dealer is required, at the request of the buyer, to remove his advertising and to make repairs as necessary to restore the vehicle to its original appearance at no cost to the buyer. Finally, the dealer can enter into an agreement with the buyer to compensate the buyer for the buyer's consent to place an insignia on the vehicle advertising the name of the dealer
I have read the above notice and I consent to the placement on the vehicle of an insignia advertising the name of the dealer, and I waive the right to compensation for the same

_____
BUYER                                                                                                    CO-BUYER

5.  Buyer warrants that balance owed on traded vehicle is accurate and agrees to pay to dealer any difference between the amount shown above and the actual amount due, and agrees that the total cash due may be increased by the amount of the difference
6   The other terms on the back of this Agreement constitute a part of this agreement
7   Any modification of this agreement must be in writing, signed by an authorized manager/representative of the dealer
8   Buyer certifies that he, she, they are over 18 years of age
9   Buyer(s) certifies that he, she  they have been given the opportunity to read the owners manual including the manufacturer's express warranty and rustproofing information

| Dealers Signatures | Buyer's Signatures: |
|---|---|
| | I (we) acknowledge receipt of a copy of this agreement. I (we) understand that there are no other agreements, express warranties or representations, except as stated above and on the back, and I (we) agree to the terms of this agreement. |
| _____ Salesperson | |
| By _____ Authorized Manager | _____ BUYER   / / Date |
| THIS ORDER IS NOT VALID UNLESS SIGNED AND ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE | _____ CO-BUYER   / / Date |

OTHER TERMS AND CONDITIONS AGREED UPON BY DEALER AND BUYER(S)

The Order and Agreement on the reverse side hereof is subject to the following, all of which has been mutually agreed upon:

1.    The manufacturer has reserved the right to change the sales price to the Dealer of new motor vehicles, without notice. In the event the price to the Dealer, of the new motor vehicle ordered hereunder is changed by the manufacturer prior to delivery of the new motor vehicle ordered hereunder, the Dealer reserves the right to change the cash delivered price of the motor vehicle by the amount of such increase. If the cash delivered price is increased by the Dealer, the Buyer(s) may if dissatisfied with the new price, cancel this Order and Agreement. If a used vehicle has been traded in as part of the consideration herein, such used vehicle shall be returned to the Buyer(s), upon payment of reasonable charges for storage and repairs (if any) or if the used vehicle has been previously sold by the Dealer, the amount received therefor, less selling expenses and any expense incurred in storing, insuring, conditioning or advertising the used vehicle for sale, shall be returned to the Buyer(s).

2.    If the used vehicle owned by Buyer(s) and described above on the reverse hereof is not to be delivered to the Dealer until delivery of a vehicle purchased hereunder, the used vehicle shall be reappraised at that time and such reappraisal value shall determine the allowance made for the used vehicle and the credit to the Buyer(s). The Buyer(s) agrees to deliver to the Dealer the title to the used vehicle traded along with the delivery of such vehicle and the Buyer(s) warrants the used vehicle to be free and clear of all liens and encumbrances except as otherwise indicated on the reverse hereof.

3.    In the event the purchase of the vehicle described herein is not to be a cash transaction with the Dealer, the Buyer(s), on or before the date of delivery of the vehicle, agrees to execute a conditional sales contract, promissory note, security agreement and financing statements to secure any and all indebtedness to be owed to purchase the vehicle.

4.    The manufacturer of the vehicle purchased hereunder has reserved the right to change the design of any new motor vehicle, chassis, accessories or parts at any time, without notice, and without obligation to make the same or similar change upon any motor vehicle, chassis, accessories or parts previously purchased or shipped to the Dealer or being manufactured or sold in accordance with the Dealer's orders. In the event of any such change to the manufacturer, the Dealer shall have no obligation to the Buyer(s) to make similar changes in any motor vehicle, chassis, accessories or parts covered by this Order and Agreement either before or after delivery thereof to the Buyer(s).

5.    The Dealer shall not be liable for failure to deliver or delay in delivery of the motor vehicle covered by this Order and Agreement where the failure is due, in whole or in part, to delay on the part of the manufacturer for any reason, accidents, strikes, fires, weather, or any other cause beyond the control of the Dealer.

6.    The cash sales price of the vehicle purchased hereunder does not include taxes imposed by any government authority prior to the time of delivery of the vehicle unless expressly so indicated and the Buyer(s) assumes and agrees to pay unless prohibited by law, any taxes, except income taxes, imposed upon or incidental to the transaction herein, regardless of the person having primary tax liability.

7.    There are no express warranties made by either the Dealer or the manufacturer on the motor vehicle, chassis or parts except, in the case of a new vehicle, the express warranty given in the Buyer(s) upon delivery of the motor vehicle or chassis. There is no express warranty of the Dealer on new vehicles. This express warranty of the manufacturer has been reviewed by the Buyer(s) with the Dealer, to the Buyer's satisfaction. Any express warranty of the Dealer concerning any used vehicle exists, if at all, pursuant to a Used Vehicle Warranty in writing, signed by the Dealer and given to the Buyer(s). THERE ARE NO IMPLIED WARRANTIES OF EITHER THE MANUFACTURER OR THE DEALER EXCEPT THE MINIMUM WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PURPOSE IMPLIED BY LAW HOWEVER, THESE IMPLIED WARRANTIES ARE INAPPLICABLE TO VEHICLES NOT USED AS CONSUMER GOODS AND TO USED VEHICLES WITH SIX (6) MODEL YEARS OLD AND DRIVEN IN EXCESS OF 60,000 MILES.

8.    Failure of the Buyer(s) to comply with the scheduled maintenance schedule of the manufacturer of the vehicle sold herein may negate any express or implied warranty of either the manufacturer or the Dealer.

9.    In the event of a material defect in any used vehicle sold hereunder, the Dealer shall have the right, but not the obligation, to inspect the used vehicle and make repairs.

10.   To the extent that any check or draft delivered to Dealer by Buyer(s) as part of a deposit or down payment is not paid upon presentation or deposit, the Buyer(s) guarantees prompt payment of the check or draft and grants to Dealer a security interest in the vehicle described on the reverse side hereof. In the event of nonpayment on such check or draft, Dealer shall have all rights of a secured party pursuant to the Uniform Commercial Code, including the right to retake or repossess the vehicle and the right to sell the vehicle and use the proceeds of sale to pay the amount of the check or draft, the expense of repossession, and sale, and all other amounts owed.

having primary tax liability.

7.     There are no express warranties made by either the Dealer or the manufacturer on this motor vehicle, chassis or parts except, in the case of a new vehicle, the express warranty given by the Buyer(s) upon delivery of the motor vehicle or chassis. There is no express warranty of the Dealer on new vehicles. The express warranty of the manufacturer has been reviewed by the Buyer(s) with the Dealer, to the Buyer's satisfaction. Any express warranty of the Dealer concerning any used vehicle exists, if at all, pursuant to a Used Vehicle Warranty in writing, signed by the Dealer and given to the Buyer(s). THERE ARE NO IMPLIED WARRANTIES OF EITHER THE MANUFACTURER OR THE DEALER EXCEPT THE MINIMUM WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PURPOSE IMPLIED BY LAW; HOWEVER, THESE IMPLIED WARRANTIES ARE INAPPLICABLE TO VEHICLES NOT USED AS CONSUMER GOODS AND TO USED VEHICLES OVER SIX (6) MODEL YEARS OLD AND DRIVEN IN EXCESS OF 60,000 MILES.

8.     Failure of the Buyer(s) to comply with the terms or any maintenance schedule of the manufacturer of the vehicle sold herein may negate any express or implied warranty of either the manufacturer or the Dealer.

9.     In the event of a material defect in any used vehicle sold hereunder, the Dealer shall have the right, but not the obligation, to inspect the used vehicle and make repairs.

10.   To the extent that any check or draft delivered to Dealer by Buyer(s) as part of a deposit or down payment is not paid upon presentation or deposit, the Buyer(s) guarantees prompt payment of the check or draft and grants to Dealer a security interest in the vehicle described on the reverse side hereof, in the event of nonpayment on such check or draft, Dealer shall have all rights of a secured party pursuant to the Uniform Commercial Code, including the right to retake or repossess the vehicle and the right to sell the vehicle and use the proceeds of sale to pay the amount of the unpaid check or draft, the expense of repossession of the vehicle and the expenses of sale including court costs and attorney's fees.

11.   IMPORTANT! Purchaser(s) and Dealer agree that if any Dispute (except those specifically noted in this Arbitration Agreement) arises, the Dispute will be resolved by binding arbitration by a single arbitrator under the applicable rules of the alternative dispute resolution agency with that shall be rendering neither decision with separate findings of fact and conclusions of law. THE PARTIES UNDERSTAND THAT THEY ARE WAIVING THEIR RIGHTS TO A JURY TRIAL OF ALL DISPUTES BETWEEN THEM NOT SPECIFICALLY EXEMPTED FROM ARBITRATION IN THIS ARBITRATION AGREEMENT

12.   Additional Arbitration Terms - An award by the arbitrator shall be final and binding on all parties to the proceeding. The arbitrator shall apply the substantive law of Maryland and the arbitration shall take place in the locality in which Dealer is located. All arbitration costs and expenses shall be borne as determined by the arbitrator. Judgment on an award may be entered by either party in the highest local, state, or federal court, or before any administrative body. A dispute is any question as to whether something must be arbitrated, as well as any disputed concerning the arbitration state or federal statute that may be the subject of binding arbitration, any purely monetary claim arises other than $500.00 in the aggregate whether contract, tort, or other, arising from the negotiation of any terms of the Buyer's Order, any legally enforceable insurance product, or any retail installment sale contract or lease (but this arbitration provision does not apply and shall not be binding on any assignee thereof), provided, however, that your failure to provide consideration for the sale (such as finding your failure to pay a note, a dishonored check, failure to provide a trade title, or failure to pay taxes) or retaining non-additional benefit in trade, as well as any right to retake possession of the vehicle pursuant to the Buyer's Order shall not be considered a Dispute and shall not be subject to arbitration.

If the vehicle described herein is a used vehicle, federal regulations may require a special buyer's guide to be displayed on the window.

THIS INFORMATION YOU SEE ON WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

Si el vehiculo descrito en este contrato es un vehiculo usado, las regulaciones federales pueden exigir que se exhiba un guia especial para el comprador.

LA INFORMACION QUE USTED VE EN LA FORMA DE VENTANILLA PARA ESTE VEHICULO ES PARTE DE ESTE CONTRATO. LA INFORMACION EN LA FORMA DE VENTANILLA DOMINA CUALESQUIER ESTIPULACION CONTRARIA EN EL CONTRATO DE VENTA.

## Rule 16-308(c) STATEMENT

This case is a consumer class action seeking relief for an auto dealer's unauthorized addition of dealer add on items to vehicles without the purchasers' knowledge or consent and without disclosing the additional charges for these items to the purchasers or in the purchase documents as required by law. As discussed below, it satisfies the Rule 16-308(c) factors for assignment to the Business and Technology Program (the "Program"):

**(1)      The nature of the relief sought.**

The Maryland Business and Technology Task Force Report (the "Report") recommended that eligibility for assignment to the Program be restricted to complaints "seeking compensatory damages totaling $50,000.00 or more, or . . . primarily injunctive or other equitable relief." Report, p.8 part VI.B.1.a.  The present case meets this requirement.  Although the exact size of the Class and exact amount of damages recoverable in this case are unknown, the Complaint seeks to recover statutory and actual damages on behalf of a Class of Maryland consumers alleged to number in the "hundreds, if not thousands."  Complaint ¶ 49.  The Complaint also seeks equitable relief as the Court deems appropriate. Complaint ¶ 52.

**(2)      The number and diverse interests of the parties.**

With respect to this factor, the Report determined that the Program was appropriate for cases involving business entities, as well as individuals "if involved in a dispute appropriate for Program designation."  Report p. 8 part VI.B.1.  The Task Force Report further found that "commercial class actions" "should presumptively be assigned to the Program." *Id.* at pp. 8-9, part VI.B.1.b.  The present case meets this requirement, as it involves a business entity, arises from that entity's commercial activity, and is a commercial class action.

**(3)      The anticipated nature and extent of pretrial discovery and motions.**

This case will require bifurcated discovery, with class certification discovery proceeding first, followed by Plaintiffs' motion for class certification, and merits-focused discovery commencing after the Court's decision on class certification.

**(4)      Whether the parties agree to waive venue for the hearing of motions and other pretrial matters.**

Plaintiffs do not anticipate that waiving venue for the hearing of motions and other pretrial matters will be an issue in this case.

**(5)      The degree of novelty and complexity of the factual and legal issues presented.**

This case presents complex legal issues.  Among other things, this case involves alleged violations of the essential public policy of Maryland and the Consumer Protection Act. The complex nature of commercial class actions also supports Program assignment here, as noted above.

**(6)      Whether business or technology issues predominate over other issues presented in the action.**

Business and technology issues predominate over other issues in this case.  As discussed above, the Program is designed to accommodate commercial class actions, as well as cases asserting claims under the Consumer Protection Act.  The issues in this case will focus on class certification issues as well as the Consumer Protection Act, issues that the Program was specifically designed to address.  The complex nature of commercial class actions also supports Program assignment here, as noted above.

**(7)      The willingness of the parties to participate in ADR procedures.**

Plaintiffs are willing to explore participation in mediation.